Tagged



**ORDERED in the Southern District of Florida on October 01, 2008.**

**Paul G. Hyman, Chief Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:

FIRST NLC FINANCIAL SERVICES,
LLC, et al.

     Debtors.             /

DEBORAH C. MENOTTE, TRUSTEE

     Plaintiff,

v.

NLC HOLDING CORP., FNLC FINANCIAL
SERVICES, INC., BLUE BOY LIMITED
PARTNERSHIP, NSH VENTURES II,
L.P., and FRIEDMAN BILLINGS RAMSEY
GROUP, INC.

     Defendants.         /

Chapter 7 Cases
Case No. 08-10632-BKC-PGH
(Jointly Administered)


Adv. Pro. 08-01327-PGH

### ORDER DENYING DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

**This matter** came before the Court for hearing on August 27,

2008, upon NLC Holding Corp., FNLC Financial Services, Inc., Blue

Boy Limited Partnership, and NSH Ventures II, L.P.'s (collectively, the "Defendants") *Joint Motion for Judgment on the Pleadings* ("Motion")(DE #58).[1] Deborah C. Menotte ("Trustee") filed *Chapter 7 Trustee's Memorandum in Opposition to Defendants' [Motion]* (DE #69). For the reasons set forth below, the Court herewith denies the Motion.

## I.   *Procedural History*

On January 18, 2008, First NLC Financial Services, LLC ("First NLC" or "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code. The Debtor was in the business of originating and selling prime and subprime mortgages. The Debtor continued to operate its business as a debtor-in-possession after filing its petition. On January 29, 2008, the U.S. Trustee appointed the Creditors Committee ("Committee"). On February 28, 2008, the Court entered an *Agreed Final Order (I) Approving an Agreement for the Use of Cash Collateral; and (II) Granting Adequate Protection* in the main case (case no.: 08-10632, DE #232), which included a provision granting the Committee sixty days to commence a challenge to "the validity, extent enforceability and perfection of the liens, security interests and pledges granted to and held by the Agent for the benefit of

---

[1] Friedman Billings Ramsey Group, Inc., one of the movants seeking relief pursuant to the Motion, was subsequently dismissed without prejudice as a defendant in this adversary proceeding. *See Order Granting Defendant Friedman Billings Ramsey Group, Inc.'s Motion to Dismiss Plaintiff's Adversary Proceeding Complaint* (DE #71).

the Lenders." On May 9, 2008, the Committee filed a Complaint initiating the above-referenced adversary proceeding ("Complaint") (DE #1). On May 12, 2008, the Court approved the Debtor's voluntary conversion from Chapter 11 to Chapter 7. On June 27, 2008, the Court entered an *Order Granting Motion to Substitute Chapter 7 Trustee as Real Party in Interest* (DE #18), wherein the Court approved the substitution of the Trustee for the Committee as the Plaintiff in this adversary proceeding.

On July 25, 2008, the Defendants filed their Answers to the Complaint (DE#s 32, 33, 34 and 36), and pursuant to Fed. R. Civ. P. 12(b)(6), a *Joint Motion to Dismiss Plaintiff's Complaint* for failure to state a claim upon which relief can be granted (DE #37). The Trustee then filed a *Motion to Strike [Defendants' Motion to Dismiss]* ("Motion to Strike") (DE #46). The Court granted the Motion to Strike without prejudice to the Defendants filing a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c). On August 12, 2008, the Defendants filed the instant Motion seeking judgment on the pleadings.

## II.  *Standard for Judgment on the Pleadings*

The Motion is brought pursuant to Federal Rule of Civil Procedure 12(c), as made applicable herein by Federal Rule of Bankruptcy Procedure 7012. The standard for granting a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as a motion to dismiss under Rule

3

12(b)(6). *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *see also, 316, Inc. v. Maryland Cas. Co.*, 2008 WL 2157084, at * 1 (N.D. Fla. May 21, 2008) (*citing Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002)); *Perdido Sun Condominium Ass'n, Inc. v. Nationwide Mut. Ins. Co.*, 2007 WL 2565990, at *3 (N.D. Fla. Aug. 30, 2007). In evaluating the Motion,"the facts stated in . . . [the] complaint and all reasonable inferences therefrom are taken as true." *Stephens v. Dept. of Health and Human Servs*. 901 F.2d 1571, 1573 (11th Cir. 1990). In the past it had been stated that a complaint would not be dismissed for failure to state a claim unless it appeared beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1968 (2007)(*citing Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). However, the Supreme Court recently rejected a literal interpretation of this "no set of facts rule". *Id.* at 1968-69. ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint"). A complaint must plead "enough facts to state a claim for relief that is plausible on its

4

face."[2] *Id* at 1974. A complaint is sufficient if it succeeds in "identifying facts that are suggestive enough to render [an element of a claim] plausible." *Id.* at 1965; *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007). In determining the Motion, this Court "must determine only whether 'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *Perdido*, 2007 WL 2565990 at *3 (citations omitted).

### III. *Allegations of the Complaint*

The Complaint was filed with two exhibits attached: a Recapitalization Agreement (Compl. Ex. A); and a Loan and Security Agreement ("Loan Agreement") (Compl. Ex. B) (collectively, the "Exhibits"). The Exhibits outline a two-stage, two-closings transaction, pursuant to which at the first closing a secured loan was allegedly made by the Defendants to the Debtor. The Exhibits contemplated a second closing at which the purported secured loan would be converted into equity. The Exhibits listed several conditions precedent to be satisfied prior to holding the second closing. One of these conditions was the procurement of all regulatory approvals required to effect a change in control of a mortgage broker and originator like the

---

[2] Contracts attached to the complaint as exhibits are "considered part of the record for a Rule 12(b)(6) motion." *A.H. Siedle v. Nat'l Assoc. of Sec. Dealers, Inc.*, 248 F.Supp.2d 1140, 1143 (M.D. Fla. 2002). A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes. *See* Fed. R. Civ. P. 10(c), as incorporated by Bankruptcy Rule 7010.

Debtor. The regulatory approvals were not obtained and the second closing did not occur.

The Complaint alleges that, although the Defendants characterized the transactions at issue as loans, the Defendants manifested the attributes of ownership of the Debtor by their acts and conduct. The Complaint further alleges that at the time of the purported loans, First NLC was undercapitalized and could not procure new credit from lenders in an arms' length transaction. The Trustee maintains that the Defendants should be treated as equity holders rather than as secured creditors in this bankruptcy.

To that end the Complaint seeks several types of relief, including but not limited to: recharacterization of the alleged debt owed by the Debtors to the Defendants as capital such that payment to the Defendants of same, if any, is subordinated to the prior payment in full of all claims against the Debtors' estates; the disgorgement of profits, set-offs, credits and other value obtained or withheld by any or all of the Defendants for actual or potential application to the debts allegedly owed them, including, without limitation, the True Up and the Interest Payments (each as defined in the Complaint); costs and attorneys' fees; and treatment of the Complaint as constituting objections to both the Defendants' secured claim(s), and to any of Defendants' unsecured claim(s) for any deficiency amounts, with

such objections being sustained by the Court. (Compl. ¶¶ A, B, D and E)

**IV.  *The Motion***

The Motion argues that the Defendants are entitled to judgment on the pleadings because the Complaint fails to state a claim upon which relief may be granted. The Defendants specifically argue that: 1) the parol evidence rule will exclude all of the Trustee's evidence regarding the Defendants' intent in entering into the subject transaction(s); 2) regulatory approval is a mandatory condition precedent to becoming a controlling shareholder of the Debtor and neither the Defendants' subjective "intent" nor the Court can dispense with this condition precedent; and 3) the cause of action seeking recharacterization is no longer viable in light of the Supreme Court's decision in *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 127 S.Ct. 1199 (2007). The Court addresses each of these arguments below.

**A.   The Parol Evidence Rule Does Not Exclude Trustee's Evidence of the Defendants' Intent**

The Defendants contend that the Complaint must be dismissed because the parol evidence rule will operate to exclude, as a matter of law, all of the evidence cited by the Trustee in her Complaint.  "The parol evidence rule applies to verbal agreements between the parties to a written contract which are made before or at the time of execution of the contract." *J. Lynn Const., Inc. v. Fairways at Boca Golf and Tennis Condo. Assoc., Inc.*, 962

7

So.2d 928, 930 (Fla. 4th DCA 2007)(internal quotation omitted). "The parol evidence rule provides that a contemporaneous oral agreement may not be used to vary the terms of a written agreement unless there is ambiguity as to the meaning of the contract." *Madsen, Sapp, Mena, Rodriguez & Co., P.A. v. Palm Beach Polo Holdings, Inc.*, 899 So.2d 435, 436 (Fla. 4th DCA 2005). The Defendants maintain that the Exhibits clearly and unambiguously establish, within their four corners, the Defendants' intent to structure a "loan then own" series of transactions. The Defendants argue that any other parol evidence offered by the Trustee to establish the Defendant's alleged intent to the contrary is inadmissible.

The Court finds that the parol evidence rule does not operate to exclude evidence outside the four corners of the Exhibits which could prove the allegations of the Complaint. The Trustee does not seek to enforce a particular type of performance under the contracts by invoking an alleged prior or contemporaneous oral agreement. To the contrary, she is in many instances citing the contractual provisions themselves as indicia of an immediate transfer of ownership and capital contribution by the Defendants, rather than a loan. For example, the Complaint alleges that pursuant to the Loan Agreement no interest or principal was payable until after the second closing at which time all accrued interest was to be converted into common stock

8

such that no interest was ever to be paid. Compl. ¶41. The Complaint further alleges that the parties' communications, an example of which is a July 26, 2007 press release issued by NLC Holdings, establish that the purported loans were treated by the parties as the functional equivalent of an equity acquisition. Compl. ¶46.

The Trustee does not seek to introduce evidence for the purpose of varying the performance of a party to the Loan and Recapitalization Agreements or to contradict the terms of these unambiguously written agreements. Rather the Trustee seeks to use the provisions within these agreements, in addition to other evidence, to establish that the Defendants' claims should be treated as those of equity interest holders rather than as secured lenders. The Court concludes that the parol evidence rule is not an impediment to the admissibility of such evidence to prove the allegations of the Complaint.

**B.    Recharacterization Does Not Require Regulatory Approval**

The primary relief sought by the Complaint is recharachterization of the amounts paid by the Defendants to the Debtor as capital contributions, rather than as secured debt. At least five Circuit Courts of Appeal, including the Eleventh Circuit, recognize the power of bankruptcy courts to recharachterize debt as equity. *See, Estes v. N & D Prop., Inc.*, 799 F.2d 726, 733 (11th Cir. 1986) ("Shareholder loans may be

9

deemed capital contributions in one of two circumstances: where the trustee proves initial undercapitalization or where the trustee proves that the loans were made when no other disinterested lender would have extended credit."); *In re Autostyle Plastics, Inc.*, 269 F.3d 726, 748 (6th Cir. 2001) (holding that bankruptcy courts "can consider whether to recharacterize a claim of debt as equity"); *In re Hedged Inv. Assoc., Inc.,* 380 F.3d 1292 (10th Cir. 2004); *In re Submicron Sys. Corp.*, 432 F.3d 448 (3d Cir. 2006); *In re Official Comm. of Unsecured Creditors for Dornier Aviation, Inc.*, 453 F.3d 225, 231 (4th Cir. 2006) ("recharacterization is well within the broad powers afforded a bankruptcy court in § 105(a) and facilitates the application of the priority scheme laid out in § 726.").

Recharachterization prevents an equity investor from labeling its contribution as a loan, and circumventing the Bankruptcy Code's priority system by guaranteeing itself a larger recovery and higher priority if the debtor files for bankruptcy. *Dornier Aviation*, 453 F.3d at 231. Recharacterization and equitable subordination present different questions and serve different functions. *In re Autostyle*, 269 F.3d at 748-749. "While a bankruptcy court's recharacterization decision rests on the *substance of the transaction* giving rise to the claimant's demand, its equitable subordination decision rests on its assessment of the *creditor's behavior*." *Dornier Aviation*, 453

10

F.3d at 232 (emphasis in original). Recharacterization analysis seeks to distinguish true debt from camouflaged equity. *Hedged-Investments*, 380 F.3d at 1298. Recharacterization determinations "turn on whether a debt actually exists, not on whether the claim should be equitably subordinated." *Autostyle Plastics*, 269 F. 3d at 748 (internal citations omitted). By contrast, "[i]n an equitable subordination analysis, the court is reviewing whether a legitimate creditor engaged in inequitable conduct, in which case the remedy is subordination of the creditor's claim 'to that of another creditor only to the extent necessary to offset injury or damage suffered by the creditor in whose favor the equitable doctrine may be effective.'" Id. at 749.

Courts generally consider a number of factors in determining if recharachterization is appropriate. *See e.g., Hedged-Investments Assoc.*, 380 F.3d at 1298 (adopting comprehensive multi-factor approach set forth in *Stinett's Pontiac Serv.,Inc., v. Comm'r of Internal Revenue,* 730 F.2d 634, 638 (11th Cir. 1984), and noting that too heavy emphasis on undercapitalization could discourage legitimate efforts to keep a flagging business afloat); *Autostyle Plastics*, 269 F.3d at 750 (considering eleven Roth Steel factors in recharacterization analysis);*In re Blevins Concession Supply Co.,* 213 B.R. 185, 186-87 (Bankr. M.D. Fla. 1997)(considering 13 factors set forth in *Montclair, Inc., v. Comm.,* 318 F.2d 38 (5th Cir. 1963) to determine whether amounts

11

advanced constituted equity capital or indebtedness); *In re Biscayne Inv. Group, Ltd.,* 264 B.R. 765 (Bankr. S.D. Fla. 2001)(considering thirteen factors); *but compare Diasonics v. Ingalls*, 121 B.R. 626, 631 (Bankr. N.D. Fla. 1990)(acknowledging multi-factor analyses, but determining pursuant to *N & D Prop.*, 799 F.2d 726, that the appropriate standard for recharchterization is initial undercapitalization or whether loans were made when no other disinterested lender would have extended credit). "None of the factors is dispositive and their significance may vary depending on circumstances." *Hedged-Investments*, 350 F.3d at 1298-99. "No mechanistic scoreboard suffices." *Submicron*, 432 F.3d at 456.

> While these tests undoubtedly include pertinent factors, they devolve to an overarching inquiry: the characterization as debt or equity is a court's attempt to discern whether the parties called an instrument one thing when in fact they intended it as something else. That intent may be inferred from what the parties say in their contracts, from what they do through their actions, and from the economic reality of the surrounding circumstances. Answers lie in facts that confer context case-by-case.

*Id.*

In this case, the Defendants argue that in order to grant the relief requested, the Court would have to determine that the Defendants became an 80% shareholder as of the first closing. Defendants further argue the Plaintiff cannot state a claim for which relief can be granted as a matter of law, because a change in control of the Debtor, a regulated mortgage originator/broker,

requires numerous regulatory approvals which were not procured. The Defendants also argue that to grant the relief requested, the Court would either have to dispense with the required regulatory approvals to effect a change in control of the Debtor, or issue a mortgage broker license to the Defendants, neither of which alternatives the Court has jurisdiction to accomplish. The Court does not agree that such measures are necessary in order to grant the relief requested.

The requirements to legally effect a change in control of the Debtor do not stand as an impediment to recharacterizing the putative loan as equity for the purposes of this bankruptcy proceeding. The crux of a recharacterization claim is that a putative loan should be treated as if it were a capital contribution, regardless of whether that capital contribution has been formally acknowledged by a defendant, much less by a regulatory authority. Indeed, the essence of a recharacterization case – and the only reason that such relief would ever be sought – is that a defendant claims that money it advanced to a now-bankrupt entity is a loan, not evidence of its ownership of that entity. A cause of action for recharacterization does not hinge on whether a regulatory approved acquisition of ownership interests has taken place.  There simply is no requirement in the Eleventh Circuit that a "sale" have occurred in order for a recharacterization claim to proceed.

13

The Complaint alleges that there was a defacto transfer of ownership even though the second closing did not occur and even though the necessary regulatory approvals required for a legal transfer of control were not obtained. The Complaint's allegations, taken as true, would support some of the factors that courts consider in determining causes of action to recharacterize purported loans as equity for purposes of administering bankruptcy estates.

**C.** ***Travelers does not invalidate recharachterization actions***

Defendants' final argument is that a federal cause of action for recharacterization is no longer viable in the aftermath of the Supreme Court's decision in *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 127 S.Ct. 1199 (2007). In *Travelers*, the Supreme Court addressed whether the Ninth Circuit's "Fobian Rule", disallowing claims for attorney fees incurred litigating federal bankruptcy issues, was valid in the presence of a contract enforceable under applicable state law that provided for such fees. *Id.* at 1204-1205. The Supreme Court found no textual support in the Bankruptcy Code for the Fobian Rule and reversed the Ninth Circuit. *Id.* at 1206. The Court noted that "we generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." *Id.* Defendants argue that, like the Fobian Rule, there exists no textual support in the Bankruptcy Code to support

14

a cause of action for recharachterization. Defendants contend that recharahcterization actions are invalid in the wake of *Travelers.* The Court is unpersuaded.

The Court notes that *Travelers* is not a recharacterization case. *Travelers* does not mention recharacterization, nor does it discuss in any context, much less overrule, any of the recharacterization cases that have emerged from the various Circuit Courts of Appeal. Nevertheless, this Court does find textual support in the Bankruptcy Code that permits it to examine the substance of transactions purporting to create debt, and to recharachterize as equity purported debt that is debt in name only. Nothing is more fundamental to the Court's exercise of its authority over the cases before it than the power to determine the validity and priority of asserted claims. Textual support for recharachterization may be found in §§ 105(a) and 726 of the Bankruptcy Code, as well as in § 101's definitions of "claim", "equity security", "equity security holder", and "debt". *See* 11 U.S.C. § 101(5),(12),(16)&(17). *See also* Peretz, Neil M., "Recharacterization in the Ninth Circuit: Has the Supreme Court Finally Derailed the *Pacific Express*?" 17 *J. Bankr. L. & Prac.* 2 Art. 4 ("The definitions in the Code are to be applied by the court and not unilaterally by a putative creditor.").

The Fourth Circuit found that recharachterization was necessary to implementation of the Bankruptcy Code and that it

15

served a different function than equitable subordination pursuant
to § 510 or claims disallowance pursuant to § 502(b):

> [R]echaracterization is well within the broad
> powers afforded a bankruptcy court in § 105(a) and
> facilitates the application of the priority scheme
> laid out in § 726. . . . Thus, implementation of
> the Code's priority scheme requires a
> determination of whether a particular obligation
> is debt or equity. Where, as here, the question is
> in dispute, the bankruptcy court must have the
> authority to make this determination in order to
> preserve the Code's priority scheme. If the court
> were required to accept the representations of the
> claimant, . . . then an equity investor could
> label its contribution a loan and guarantee itself
> higher priority - and a larger recovery - should
> the debtor file for bankruptcy. Thus, denying a
> bankruptcy court the ability to recharacterize a
> claim would have the effect of subverting the
> Code's critical priority system by allowing equity
> investors to jump the line and reduce the recovery
> of true creditors. In light of the broad language
> of § 105(a) and the larger purpose of the
> Bankruptcy Code, we believe that a bankruptcy
> court's power to recharacterize is essential to
> the proper and consistent application of the Code.

* * *

> GMBH contends that recharacterization does
> not exist independently of the bankruptcy court's
> disallowance power under § 502(b) or the court's
> equitable subordination power under § 510(c). This
> argument seems to be rooted in GMBH's view that
> recharacterization serves the same purposes and
> requires the same analysis as disallowance or
> equitable subordination. In fact, contrary to
> GMBH's arguments, recharacterization requires a
> different inquiry and serves a different function.

* * *

> Disallowance of a claim under § 502(b) is
> only appropriate when the claimant has no rights
> vis-à-vis the bankrupt, i.e., when there is "no
> basis in fact or law" for any recovery from the
> debtor. When a bankruptcy court disallows a claim,

16

the claim is completely discharged. By contrast, recharacterization is appropriate when the claimant has some rights vis-à-vis the bankrupt. That is, when a bankruptcy court recharacterizes a claim, it necessarily recognizes the existence of a relationship between the debtor and the claimant, but it determines that the relationship is one of an equity owner rather than a creditor.

* * *

The Bankruptcy Code mandates that debt receive a higher priority than equity in distribution. See 11 U.S.C. § 726. Thus, even if a claimant is able to meet § 502's minimal threshold for allowance of the claim, the bankruptcy court still must look beyond the form of the transaction to determine the claim's proper priority.

* * *

In holding that the recharacterization power is integral to the consistent application of the Bankruptcy Code, we join every other circuit that has considered the question.

*Dornier Aviation,* 453 F. 3d at 231-233.

The Court adopts the reasoning of the Fourth Circuit and finds it consistent with the Eleventh Circuit's sole bankruptcy recharachterization opinion set forth in *Estes v. N & D Prop., Inc.*, 799 F.2d 726 (11th Cir. 1986). In addition, the Court finds that its authority to recharachterize debt as equity is supported by the text of the Bankruptcy Code. Consequently, the Court is not persuaded by Defendants' argument that *Travelers* invalidates causes of action for recharachterization.

### CONCLUSION

In determining a motion for judgment on the pleadings it is the Court's job to determine whether the complaint pleads

17

sufficient facts to state a claim that is plausible. *Twombly*, 127 S. Ct. at 1964-65. The Court finds that the Plaintiff's Complaint satisfies this standard and survives Defendant's Motion for judgment on the pleadings.

### ORDER

The Court, having reviewed Plaintiff's Complaint, Defendants' Motion, having considered the applicable law, the arguments of the parties, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that Defendants' Motion is **DENIED.**

###

Copies furnished to:
Jeffrey Snyder, Esq.
Joshua Prever, Esq.
Patricia Redmond, Esq.
Andrew Kamensky, Esq.

Attorney Snyder is directed to serve a copy of this order on all interested parties not listed above and to file a certificate of service.

18