Tagged



**ORDERED in the Southern District of Florida on February 12, 2009.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

_____

```
            UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF FLORIDA
               WEST PALM BEACH DIVISION
```

In re:

FIRST NLC FINANCIAL SERVICES,
LLC, et al.

    Debtors.                  /

Chapter 7 Cases
Case No. 08-10632-BKC-PGH
(Jointly Administered)

DEBORAH C. MENOTTE, TRUSTEE

    Plaintiff,

v.

NLC HOLDING CORP., FNLC FINANCIAL
SERVICES, INC., BLUE BOY LIMITED
PARTNERSHIP, NSH VENTURES II,
L.P., and FRIEDMAN BILLINGS RAMSEY
GROUP, INC.

    Defendants.            /

Adv. Pro. 08-01327-PGH

**ORDER: 1) DENYING DEFENDANTS BLUE BOY LIMITED PARTNERSHIP AND NSH VENTURES II, L.P.'S MOTION FOR SUMMARY JUDGMENT; AND 2) DENYING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

**This matter** came before the Court upon Blue Boy Limited Partnership ("Blue Boy") and NSH Ventures II, L.P.'s ("NSH") (collectively, the "Defendants") *Motion for Summary Judgment*

("Defendants' Motion")(D.E.#121), and upon Deborah C. Menotte, the Chapter 7 Trustee's, ("Trustee" or "Plaintiff") *Motion for Summary Judgment* ("Trustee's Motion")(D.E.#119). The parties filed a Joint Statement of Undisputed Material Facts ("Joint Stipulation") (D.E.#135), as well as responses and replies to each other's motions.

## BACKGROUND

On January 18, 2008 ("Petition Date"), First NLC Financial Services, LLC ("First NLC" or "Debtor"), whose business was originating and selling prime and subprime mortgages, filed for relief under Chapter 11 of the Bankruptcy Code. The Complaint initiating this adversary proceeding was filed by the Creditors Committee prior to the Debtor voluntarily converting its case from Chapter 11 to Chapter 7. After conversion, the Court approved substitution of the Trustee for the Creditors Committee as the Plaintiff and real party in interest in this action. The Complaint names five defendants: Friedman Billings Ramsey Group, Inc. ("FBR"), NLC Holding Corp. ("NLC Holding"), FNLC Financial Services, Inc. ("FNLC Financial"),[1] Blue Boy, and NSH. The

---

[1] The Debtor is a wholly owned subsidiary of FNLC Financial, which is turn is a wholly owned subsidiary of FBR. *See Decl. Of Thomas J. Allison, CRO, in Support of Chapter 11 Petition and Request for First Day Relief* (Main Case No.: 08-10632, D.E.#21). FBR and FNLC Financial were each dismissed without prejudice as defendants in this adversary proceeding. (D.E.#s 71,166). Defendant NLC Holding and the Trustee have reached a settlement for which they are currently seeking the Court's approval. Defendants NLC Holding and FNLC Financial also filed a motion for summary judgment. The Court denied as moot both that motion, and the Trustee's Motion as to defendants FNLC Financial and NLC Holding, based upon the dismissal of FNLC Financial and the pending settlement between the Trustee and NLC Holding.(D.E.#159).

2

Complaint seeks to recharacterize the alleged debt owed by the Debtor to the Defendants as equity.

### A.   *The Arguments of the Parties*

The Defendants' Motion raises a purely legal issue and argues that they are entitled to summary judgment as a matter of law. It is the Defendants' position that under Eleventh Circuit law, the Court may not recharacterize as equity a non-shareholder loan made to a debtor.  As discussed below, the Court does not agree with Defendants' interpretation of the law and denies the Defendants' Motion.

The Trustee's Motion argues that the subject advances to the Debtor were never intended to be loans. The Trustee states that even though the transaction was documented with a loan agreement, in its most critical aspects - 1) lack of evaluation of the Debtor's capacity to repay, 2) whether interest or fee payments were invoiced or made, and 3) whether the parties truly expected repayments - the advances were not loans at all and that they should be recharacterized as equity. The Trustee maintains that she is entitled to summary judgment based upon two versions of recharacterization analysis: 1) because no disinterested lender would have extended credit at the time of the alleged loans; and 2) under a multi-factor test. For the reasons set forth below, the Court herewith denies the Trustee's Motion.

**B.**   *The Joint Stipulation*

The parties stipulated to the following facts regarding the transactions under scrutiny in this case. FBR, the ultimate parent of the Debtor, made between $200 million and $300 million in inter-company advances to the Debtor prior to July 25, 2007, so that the Debtor could meet its financial obligations. Debtor repaid only a small amount of these advances. During the first half of 2007, the frequency and magnitude of the inter-company advances increased. In early 2007, FBR sought to divest itself of a large portion of its ownership interest in First NLC. Starting in that time period, FBR pursued various strategic alternatives with regard to its investment in the Debtor, including a "144 a" offering, but these efforts did not come to fruition. In addition, FBR contacted more than 40 potential investors, and made presentations to many of them. Two investment firms prepared non-binding letters of intent to invest in First NLC, but an agreement was reached with only one of these firms, Sun Capital Partners IV ("Sun"). Sun's objective at the time of its initial discussions with FBR in 2007 was to invest in an entity that would give it entry to the subprime loan market. On April 18, 2007, Sun furnished FBR with a signed Letter of Intent, detailing a transaction in which Sun and FBR would recapitalize First NLC through investments of 80% and 20%, respectively, in exchange for preferred equity securities and common shares allocated on the

4

same 80%-20% basis. Sun recognized that it could not officially become an equity owner of the Debtor without first obtaining regulatory approvals in various states in which the Debtor operated. In addition, Sun did not want to become an equity owner of the Debtor until certain class action litigation ("Class Action Lawsuit") against the Debtor was resolved.

On July 25, 2007, FBR, FNLC Financial, Sun-affiliate NLC Holding, and the Debtor entered into a series of agreements including a Recapitalization Agreement and a Loan and Security Agreement (collectively, the "Agreements"). The Agreements provided for a two-stage, two-closings transaction. "Stage One" called for NLC Holding and FNLC Financial to lend $60 million and $15 million, respectively, to the Debtor. Promissory notes were issued to NLC Holding and FNLC Financial, and the contemplated amounts were transferred to the Debtor. Sometime in August, 2007 FNLC Financial's $15 million loan was converted to equity in order to satisfy regulatory requirements as to the Debtor's net tangible book value. NLC Holding perfected its security interests and liens for itself, NSH, and Blue Boy by making the appropriate UCC-1 filings and entering into deposit control agreements with respect to each of the Debtor's bank accounts. In various communications prior to the first closing, certain of the Defendants stated or indicated that if a first closing did not occur, there was a likelihood that First NLC would cease

5

operations and be shut down. It was also stated or indicated that if a first closing occurred but a second closing did not occur, there was a risk that First NLC would cease operations and be shut down.

Under "Stage Two" of the transaction, the total amount of the loans, plus any capitalized interest and other amounts owing as part of the loans, was to be deemed repaid and converted to equity at a second closing. Pursuant to the Agreements, NLC Holding was authorized to assign and transfer to Neal Henschel and Jeffrey Henschel the right to participate in a portion of its $60,000,000 advance to the Debtor. On July 25, 2007, NLC Holding, First NLC, NSH, and Blue Boy entered into a Joinder to the Agreements pursuant to which NLC Holding assigned and transferred $1,000,000 of its advance to NSH, whose principal is Neal Henschel, and $5,000,000 of its advance to Blue Boy, whose principal is Jeffrey Henschel. The Debtor signed notes dated January 16, 2008 in the amounts of $1,000,000 and $5,000,000, in favor of NSH and Blue Boy respectively. Neither NSH, Blue Boy, Neal Henschel, nor Jeffrey Henschel was a shareholder of the Debtor when the parties entered into the Agreements and the Joinder. However, the Henschels owned shares in the Debtor's ultimate parent company, FBR. Although not included in the Joint Stipulation, the Court notes that Neal Henschel stated that he served as the Debtor's Chairman of the Board of Managers and

Chief Executive Officer from the inception of the Debtor until some time around the Petition Date.(Neal Henschel Dep. Tr. at 7-8)(D.E. #129). Jeffrey Henschel indicated that he was President and Chief Operating Officer beginning some time in 2003.(Jeffrey Henschel Dep. Tr. at 20)(D.E.#122). Jeffrey Henschel was also a member of the Board of Managers of the Debtor. *Id*. at 183-84.

The Joint Stipulation further notes that the Agreements identified eight conditions to be satisfied or waived before the second closing was to occur. These conditions included obtaining all of the mortgage licenses required to operate the business; obtaining consents of the Debtor's landlords; and settlement of the Class Action Lawsuit. The Class Action Lawsuit was settled in December 2007. At least two regulatory licenses (Florida and Virginia) and one landlord's consent had not been obtained when NLC Holding informed the Debtor that it would not proceed to the second closing. In January 2008, another affiliate of Sun, MTG Finance, LLC, purchased a portfolio of the Debtor's loans with a face amount of approximately $96 million.

None of the Defendants demanded payment on the loans at any time between the first closing and the Petition Date, nor did the Debtor make any payments on the loans that the Trustee seeks to recharacterize.

**CONCLUSIONS OF LAW**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## I.  *The Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056(c), provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Rice v. Braniger Org., Inc.*, 922 F.2d 788 (11th Cir. 1991); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987); *In re Pierre*, 198 B.R. 389 (Bankr. S.D. Fla. 1996). Rule 56 is based upon the principle that if the court is made aware of the absence of genuine issues of material fact, the court should, upon motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a trial. *See United States v. Feinstein*, 717 F. Supp. 1552 (S.D. Fla. 1989).

8

In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) (*citing Anderson*, 477 U.S. at 248). "Summary judgment is appropriate when, after drawing all reasonable inference in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broad. Co.*, 844 F.2d 988, 992 (2d Cir. 1988).

## *II. Defendants' Motion Denied: Recharacterization is Not Limited to Shareholder Loans*

At least five Circuit Courts of Appeal, including the Eleventh Circuit, recognize the power of bankruptcy courts to recharacterize debt as equity. *See Estes v. N & D Prop., Inc., (In re N & D Prop., Inc.)*, 799 F.2d 726 (11th Cir. 1986); *Bayer Corp. v. MasoTech, Inc., (In re AutoStyle Plastics, Inc.*), 269 F.3d 726 (6th Cir. 2001); *Sender v. Bronze Group, (In re Hedged-Inv. Assocs., Inc.),* 380 F.3d 1292 (10th Cir. 2004); *Cohen v. KB Mezzanine Fund II, LP, (In re SubMicron Sys. Corp.)*, 432 F.3d 448 (3d Cir. 2006); *Fairchild Dornier GMBH v. Official Comm. of Unsecured Creditors, (In re Official Comm. of Unsecured Creditors for Dornier Aviation, Inc.)*, 453 F.3d 225, 231 (4th Cir. 2006).

9

"Recharacterization is appropriate where the circumstances show that a debt transaction was 'actually [an] equity contribution [] *ab initio.*'" *AutoStyle Plastics*, 269 F.3d at 747-48)(*quoting In re Cold Harbor Assocs., L.P.*, 204 B.R. 904, 915 (Bankr. E.D. Va. 1997)(alterations in original)). The issue to be determined in recharacterization is whether a "transaction created a debt or equity relationship from the outset." *Cold Harbor*, 204 B.R. at 915; *see also SubMicron Sys.*, 432 F.3d at 454 ("the focus of the recharacterization inquiry is whether 'a debt actually exists.'")(*quoting AutoStyle Plastics*, 269 F.3d at 748); *Hedged-Invs. Assocs.*, 380 F.3d at 1298 (applying multi-factor test "to distinguish true debt from camouflaged equity"). Recharacterization prevents an equity investor from labeling its contribution as a loan, and subverting the Bankruptcy Code's critical priority system by guaranteeing itself a higher priority - and a larger recovery - should the debtor file for bankruptcy. *Dornier Aviation*, 453 F.3d at 231. Thus, the "exercise of th[e] power to recharacterize is essential to the implementation of the Code's mandate that creditors have a higher priority in bankruptcy than those with an equity interest." *Id.* at 233.

In recognizing the power of courts to recharacterize debt, the Eleventh Circuit stated the following test: "Shareholder loans may be deemed capital contributions in one of two circumstances: where the trustee proves initial under-

10

capitalization or where the trustee proves that the loans were made when no other disinterested lender would have extended credit." *N & D Prop.*, 799 F.2d at 733 (*citing In re Multiponics Inc.*, 622 F.2d 709 (5th Cir. 1980)). Based upon this test, Defendants argue that there exists no basis upon which this Court may correctly recharacterize the loans at issue because in the Eleventh Circuit recharacterization is *only* available in cases involving shareholder loans, and not in cases involving loans made by non-shareholders such as Blue Boy or NSH. The Court does not agree.

The Eleventh Circuit's 1986 decision in *N & D Properties* has been recognized as arguably the first Circuit Court of Appeal opinion to endorse debt recharacterization in bankruptcy. *See* My Chi To & Matthew Siegel, *Debt Recharacterization Looks Back on a Good Year*, 26 Am. Bankr. Inst. J. 1 (Feb. 2007). It is important to note that *N & D Properties* was in fact a case involving a loan made to a debtor by one of its shareholders. Although the Eleventh Circuit stated a test for recharacterization of a shareholder's loan in *N & D Properties*, this Court finds nothing in the opinion that would restrict recharacterization to only those loans made to a debtor by one of its shareholders. The Eleventh Circuit did not recharacterize the insider shareholder's claim in *N & D Properties* because the trustee failed to prove his case. *Id.* at 733. However, the opinion noted the trustee's

concern that the shareholder might have engaged in a "scheme and device" to avoid the risks of business ownership. *Id.* This is substantively the same concern expressed in recharacterization opinions issued subsequently to *N & D Properties*, i.e. "whether the parties called an instrument one thing when in fact they intended it as something else." *SubMicron Sys.,* 432 F.3d at 456.

Although the Eleventh Circuit has not revisited recharacterization in the context of bankruptcy since *N & D Properties*, opinions from four Circuit Courts of Appeal and several lower courts have contributed to the development of this body of law. While many of these cases involve shareholder loans, some do not. *See e.g. SubMicron Sys.,* 432 F.3d 448; *Hedged-Inv. Assocs.*, 380 F.3d 1292; *In re AtlanticRancher, Inc.*, 279 B.R. 411 (D. Mass. 2002); *Gasser v. Infanti Int'l, Inc.*, 2008 WL 2876531 (E.D.N.Y. July 23, 2008); *In re Hallmark Builders, Inc.*, 79 A.F.T.R. 2d 97-1572 (Bankr. M.D. Fla. 1997).

Since the decision in *N & D Properties*, courts considering claims for recharacterization in the Eleventh Circuit have used both the *N & D Properties* test as well as various multi-factor tests involving more extensive sets of criteria. *Compare Diasonics Inc., v. Ingalls*, 121 B.R. 626, 631 (Bankr. N.D. Fla. 1990)(stating that in the Eleventh Circuit the appropriate standard for shareholder loan recharacterization is set forth in *N & D Prop*.); *and Mukamal v. Bakes*, 383 B.R. 798, 829 (S.D. Fla.

12

2007)(denying motion to dismiss recharacterization claim where complaint alleged sufficient grounds to infer one of the *N & D Prop.* elements); *with In re Blevins Concession Supply Co.*, 213 B.R. 185 (Bankr. M.D. Fla. 1997)(determining recharacterization claim in bankruptcy by analyzing thirteen factor test used in tax litigation)(*citing In re Lane,* 742 F.2d 1311 (11th Cir. 1984); *Matter of Mobile Steel Co. v. Diamond*, 563 F.2d 692 (5th Cir. 1977))*; In re Biscayne Inv. Group, Ltd.,* 264 B.R. 765 (Bankr. S.D. Fla. 2001)(determining recharacterization claim under thirteen factor test)(*citing Stinnett's Pontiac Service, Inc. v. Comm'r Internal Revenue Service*, 730 F.2d 634, 638 (11th Cir. 1984)); *Celotex Corp. v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 176 B.R. 223, 248 (M.D. Fla. 1994) (analyzing thirteen factor test to determine the actual manner, not the form, in which the parties intended to structure the advance at issue).

Courts in other circuits have also used varying multi-factor tests to determine recharacterization claims. *See e.g., Hedged-Inv. Assocs.*, 380 F.3d at 1298 (adopting comprehensive thirteen factor test set forth in *Stinett's Pontiac,* 730 F.2d at 638); *AutoStyle Plastics*, 269 F.3d at 750 (analyzing eleven factor test).

While the Eleventh Circuit stated a standard for recharacterization of a shareholder loan in *N & D Properties*, it

did not prohibit recharacterization of non-shareholder loans in appropriate circumstances. There is likewise no prohibition to recharacterization of non-shareholder loans embodied in any of the various multi-factor tests applied in other Circuit Courts of Appeal and lower court recharcterization opinions. Defendants argue that they are entitled to summary judgment because no court in the Eleventh Circuit has ever recharacterized a non-shareholder loan to a debtor. However, this circumstance speaks more to the facts unique to those particular cases than it does to the viability of Trustee's claim for recharacterization in this case. Under appropriate circumstances, this Court has authority to recharacterize loans that are in substance equity, regardless of whether the putative lender was or was not a shareholder of the debtor at the time of the transaction. Therefore the Defendants' Motion must be denied.

### III. *Trustee's Motion is Denied Due to Disputed Issues of Fact*

The Trustee maintains that she is entitled to summary judgment pursuant to either the *N & D Properties* test or any one of the multi-factor recharacterization tests. In adopting a multi-factor test, the Tenth Circuit noted that the test's comprehensive set of criteria provided a fairly detailed list to aid in the court's analysis while reducing a disproportionate weight on undercapitalization. *Hedged Inv. Assocs.*, 380 F. 3d at 1299 n.1. This Court finds that consideration of an expanded list

of criteria as contemplated by the multi-factor tests is appropriate in this matter. Courts using multi-factor tests repeatedly state that various factors are not of equal significance and that no one factor is controlling. *See e.g. Biscayne Inv. Group, Ltd.,* 264 B.R. at 771; *Hedged-Inv. Assocs.*, 380 F.3d at 1298-99 (none of the factors is dispositive and their significance may vary depending on the circumstances); *AutoStyle Plastics*, 269 F.3d at 750 (factors must be considered within the particular circumstances of each case); *Hillsborough Holdings*, 176 B.R. at 248 ("A court is not required to examine all the factors and the facts of each case will help dictate those factors most relevant to a court's inquiry."); *Cold Spring Harbor,* 204 B.R. at 915 ("This list of factors is not exclusive, and no one factor is predominant, nor are the factors given rigidly equal weight."). Some courts have also attempted to group a list of factors into categories such as: 1) the form of the instruments; 2) the intent of the parties; and 3) the objective economic reality as it relates to the risks taken by the investors. *Gasser v. Infanti Int'l*. 2008 WL 2876531 at *8 (citations omitted).

In *Lane*, a tax case, the Eleventh Circuit noted that "[i]n order for an advance of funds to be considered a debt rather than equity, courts have stressed that a reasonable expectation of repayment must exist which does not depend solely on the success

15

of the borrower's business." *In re Lane*, 742 F.2d 1311, 1314 (11th Cir. 1984). The *Lane* court further stated that "[w]e review the relevant [factors] well aware that '[e]ach case turns on its own factors; differing circumstances may bring different factors to the fore.'" Id. at 1315 (alterations in original) (*citing Jones v. United States,* 659 F.2d 618, 622 (5th Cir. Unit B 1981)(*quoting Slappey Drive Ind. Park v. United States,* 561 F.2d 572, 581 (5th Cir.1977)). The Third Circuit stated that the "determinative inquiry in classifying advances as debt or equity is the intent of the parties as it existed at the time of the transactions." *SubMicron Sys.*, 432 F.3d at 457. "That intent may be inferred from what the parties say in their contracts, from what they do through their actions, and from the economic reality of the surrounding circumstances. Answers lie in facts that confer context case-by-case." *Id.* at 456. The Third Circuit concluded that, "[n]o mechanistic scoreboard suffices." *Id.*

Whether the advances at issue were capital contributions or bona fide loans is a question of fact. In this matter the material facts relating to, among other things, the intent of the parties or if there existed a reasonable expectation of payment are disputed. The Defendants maintain that the Agreements reflect the intent of the parties which was that the debt would not become equity until the second closing occurred. The Court notes that the Trustee presented some documentary evidence regarding

16

the parties' intent to the contrary. The Trustee also advanced several arguments regarding the parties' intent, including for example, that the Defendants' failure to demand repayment shows that the advances were never intended to be bona fide loans. However, after drawing all reasonable inference in favor of the non-moving Defendants, the Court finds that there exist disputed issues of material fact precluding entry of summary judgment. Consequently, the Trustee's Motion must be denied. A trial is therefore necessary to determine whether the subject debts should be recharacterized as equity.

## CONCLUSION

For the reasons stated above, the Court denies the Defendants' Motion because the law permits non-shareholder loans to be recharacterized in appropriate circumstances. The Court also denies the Trustee's Motion because of the existence of disputed issues of material fact.

## ORDER

The Court, having reviewed the Defendants' Motion, the Trustee's Motion, the parties' responsive pleadings, the Joint Stipulation, the applicable law, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1. Defendants' Motion is **DENIED.**
2. Trustee's Motion is **DENIED.**

###

17

Copies furnished to:

Andrew D. Zaron, Esq.
Jay Sakalo, Esq.
Jeffrey Snyder, Esq.
Joshua Prever, Esq.
Patricia Redmond, Esq.
Andrew Kamensky, Esq
David C. Pollack, Esq.


Attorney Pollack is directed to serve a copy of this order on all interested parties not listed above and to file a certificate of service.